# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

HOPE WINDOWS, INC., ET AL. v. CHARLES SNYDER.

January 15, 1968.

Record No. 6529.

Present, All the Justices.

*Henry C. Mackall* (*Mackall & Mackall*, on brief), for plaintiffs in error.

*Betty A. Thompson* (*Ben Paul Noble*, on brief), for defendant in error.

I'ANSON, J., delivered the opinion of the court.

This action was instituted by Charles Snyder, plaintiff, against Hope Windows, Inc., and Chester L. Dove, defendants, to recover the sum of $25,000 for personal injuries and property damages resulting when a truck owned by Hope Windows, Inc., and operated by its agent, Dove, collided with plaintiff's automobile.

A jury returned a verdict for the plaintiff in the amount of $25,000, and the trial judge put him on terms to accept an award of $15,000 or face a new trial, on the grounds that the verdict bore no reasonable relation to the injuries and it shocked his conscience. Plaintiff accepted the reduced judgment under protest, according to the provisions of § 8-350, Code of 1950, 1957 Repl. Vol., and defendants

excepted to the action of the trial court in overruling their motion to set aside the jury's verdict and grant a new trial. We granted defendants a writ of error, and plaintiff has assigned cross error.

Defendants contend that the trial court erred (1) in refusing to declare a mistrial because a question asked by plaintiff's counsel during the examination of the jury on their voir dire deliberately injected insurance into the case; and (2) in refusing to set aside the jury's verdict and grant a new trial.

Evidence presented on behalf of plaintiff shows that in the early afternoon of October 5, 1962, while plaintiff's automobile was stopped for a red traffic light at the intersection of Kansas and Georgia avenues in Washington, D. C., it was struck from the rear by a truck owned by Hope Windows, Inc., and operated by Dove.

Defendant Dove testified that the traffic light was green and that plaintiff stopped suddenly for no apparent reason, causing the collision.

As a result of the collision plaintiff suffered injuries to his neck, back, and particularly to his left eye. He was first examined at the Washington Hospital Center, and upon his discharge later in the day he was advised to see his own doctor. Three days later, on October 8, 1962, plaintiff consulted Dr. Eugene Short, who treated him intermittently for his neck and back injuries from October 8 through November 12.

Dr. Short first referred plaintiff to Dr. H. W. Gray and later to Dr. Oscar Lavine, opthalmologists, for treatment of the eye injury. (Neither of these doctors testified at the trial.)

On June 17, 1963, Dr. Short referred plaintiff to Dr. Arthur Hustead, a neurological surgeon, who hospitalized plaintiff for cervical traction. After five days significant improvement was noted and plaintiff was discharged with minimal residual pain in the neck and behind the left eye. Dr. Hustead last saw plaintiff in March, 1964, when plaintiff was almost free from pain and was sleeping satisfactorily. He could not say that plaintiff had any permanent injury.

Plaintiff testified at his trial in March, 1966, that he was not experiencing any difficulty from his back and neck injuries, but that the pain behind his eye had been constant since the date of the accident and he had had difficulty sleeping. He said, however, that he had not taken any prescriptive medicine since March of 1965, but resorted to his own remedy of coffee and aspirin. He was self employed,

and lost time from his work only on visits to his doctors' offices and when in the hospital. Expenses incurred for doctors, hospitals and medicines totalled $754.60, and for automobile repair and rental, $504.81.

Defendants argue that the trial court erred in not granting their motion to discharge the jury and order a mistrial because counsel for the plaintiff deliberately injected the question of insurance on the voir dire examination of the jury panel.

The record shows that after the trial court had completed its voir dire examination of the jury panel, pursuant to Code § 8-199, Code of 1950, as amended, 1957 Repl. Vol., concerning their relationship to the parties to the action and any knowledge or interest they had in the case which would affect their ability to serve as impartial jurors, one of plaintiff's counsel made the following request in the presence of the jury panel: "I would like to know, your Honor, if any members of this panel have ever worked or are presently working for an insurance company." The record shows that at the time this question was asked the occupations of all jurors were known and there was no indication that any member of the panel was employed by an insurance company.

In overruling defendants' motion to discharge the panel and declare a mistrial, the trial judge expressed the opinion that the question propounded by plaintiff's counsel was deliberately and not inadvertently asked.

The right of plaintiffs' counsel to interrogate jurors on their voir dire as to their connection with a liability insurance company has been exhaustively treated in several annotations. See 56 A.L.R. 1418 (1928); 74 A.L.R. 849 (1931); 95 A.L.R. 381 (1935); 105 A.L.R. 1319 (1936); 4 A.L.R. 2d 761 (1949). See also, 31 Am. Jur., Rev. ed., Jury, §§ 207-210, pp. 175-180. Numerous law review articles have also been written on the subject. See, Tennyson, *The Voir Dire Insurance Dilemma*, 28 Miss. L. J. 65 (1956); Vetter, *Voir Dire ll Liability Insurance*, 29 Mo. L. Rev. 305 (1964).

It is fundamental that the parties to an action for personal injuries or death are entitled to an impartial jury. The purpose of the voir dire examination provided for by Code § 8-199 is to ascertain whether any juror has an interest in the case, or any bias or prejudice in relation to it, and if he "stands indifferent in the cause." *Davis v. Sykes*, 202 Va. 952, 956, 121 S. E. 2d 513, 516 (1961). See also, *Jackson v. Prestage*, 204 Va. 481, 484, 132 S. E. 2d 501, 504 (1963). The exam-

ination should not be so limited as to impede the solicitation of information in deciding whether a juror is impartial. On the other hand, the questions asked can convey to the panel certain information that would prevent them from being impartial and may act as a sword rather than a shield. Thus the voir dire examination must be conducted with great care if its goal of obtaining impartial jurors is to be realized.

In the recent case of *Langley v. Turner's Express, Incorporated,* 375 F. 2d 296, 297 (4 Cir. 1967), the court held, in applying Virginia law, that it was not error for the District Court to refuse to question the jury panel whether any were stockholders, directors, employees or policy holders, or were in any manner interested in any insurance company issuing policies for protection against liability for personal injuries or property damages. The court recognized that care should be exercised in questioning the jury panel as to their interest in a liability insurance company when it said:

> "We must strike a balance between the probability of danger to plaintiffs that someone sympathetic to insurance companies may remain on the jury and the danger to defendant that the jury may award damages without fault if aware that there is insurance coverage to pay the verdict. We think the latter danger is greater than is the former * * *."

In *Walker v. Crosen,* 168 Va. 410, 416, 191 S. E. 753, 755 (1937), an action to recover for wrongful death, the trial court refused the request of plaintiff to interrogate the veniremen as to whether any were agents or representatives of any casualty insurance company, or related to any agent or stockholder in such a company. There the court avoided the question of insurance by interrogating each member of the venire, which disclosed the employment of each and that no one was a stockholder in any company or had a sideline business. We held that the trial court did not err in refusing to ask the prospective jurors if they were interested in any manner in a casualty insurance company.

In *Lynch v. Alderton,* 124 W. Va. 446, 450, 20 S. E. 2d 657, 659 (1942), the court pointed out that while a trial court should exercise great care to exclude from a jury all persons who may be interested, directly or indirectly, in the result of an action on trial, the propounding to the whole panel on its voir dire of the question, "Are any of you officers, employees, agents, or stockholders in any liability

insurance company?" where the question was not asked after confiding to the trial court any situation which might warrant the question, is reversible error. See also, 11 Mich. Jur., Jury, § 33, p. 509.

The rule in Virginia is that in an action to recover damages for personal injuries, the admission of evidence or argument of counsel deliberately injected into a case to inform the jury that a defendant is insured against the accident is reversible error. *Rhinehart & Dennis Co.* v. *Brown*, 137 Va. 670, 675-679, 120 S. E. 269, 271, 272 (1923); *Lanham* v. *Bond*, 157 Va. 167, 172-176, 160 S. E. 89, 91 (1931). We said in *Simmons* v. *Boyd*, 199 Va. 806, 813, 102 S. E. 2d 292, 297 (1958), however, that while it is improper to inform the jury in a negligence action that the defendant is insured against the accident, such error is harmless if the statement relating to insurance is unintentionlly made and it appears that substantial justice has been done in the case. See also, *Irvine* v. *Carr*, 163 Va. 662, 667, 177 S. E. 208, 210 (1934); *Ames & Webb, Inc.* v. *Commercial Laundry*, 204 Va. 616, 622, 133 S. E. 2d 547, 551 (1963).

Whatever may have been the reason for counsel's requesting the court to ask the members of the jury panel in the present case if any of them had ever worked or were presently working for an insurance company, the effect of the question was to suggest to the jury that defendants were protected by liability insurance coverage. See, *Langley* v. *Turner's Express, Incorporated; supra.*

We hold that the deliberate injection of insurance coverage by plaintiff's counsel on the voir dire examination was improper and prejudicial to defendants' right to a trial by an impartial jury.

We agree with the trial court that the jury's verdict bore no reasonable relation to the injuries sustained. The size of the verdict against the background of the record in this case indicates that the question relating to insurance injected into the case on the voir dire examination may have influenced the jury in the amount of the verdict returned. The trial court recognized this by ordering the remittitur.

The remittitur required by the trial judge did not, however, cure the prejudice on the issue of liability since the evidence was conflicting on that issue, and we cannot say that the deliberate injection of insurance in the case, without justification, did not influence the jury in finding for the plaintiff. Hence under the circumstances here, the judgment is set aside and the case is reversed and remanded for a new trial on all issues.

*Reversed and remanded.*